**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| OMAR ABUROMI, et al.,<br><br>Plaintiffs,<br><br>-against-<br><br>BANK OF BEIRUT AND THE ARAB COUNTRIES, et al.,<br><br>Defendants. | 24 Civ. 5646 (JPC) (GS)<br><br>**REPORT AND RECOMMENDATION** |

**GARY STEIN, United States Magistrate Judge:**

Plaintiffs Omar Aburomi, Ihab Abbas, Sarah Y. Baddour, Fleta Cousin-Sabra, Abdullatif Sabra, and Abdulkareem Qandeel (collectively, "Plaintiffs"), commenced this action against, *inter alia*, Defendants Bank of Beirut and the Arab Countries ("BBAC") and Assaf Holding Company SAL ("Assaf") (collectively, "Defendants"). Defendants have moved to dismiss the claims asserted against them in Plaintiffs' Second Amended Complaint. (Dkt. No. 70). For the reasons set forth below, this Court recommends that Defendants' motion be **GRANTED** and that Plaintiffs' claims against them be **DISMISSED** without prejudice.[1] The Court further recommends that Plaintiffs' claims against Defendant Fransabank SAL ("Fransabank") be **DISMISSED** without prejudice based on Plaintiffs' failure to attempt to serve or prosecute their claims against Fransabank.

---

[1] On February 24, 2025, the Honorable John P. Cronan referred this matter to the undersigned for general pretrial supervision and dispositive motions requiring a report and recommendation. (Dkt. No. 33).

## BACKGROUND

### A. Plaintiffs' Allegations

The following facts are drawn from Plaintiffs' Second Amended Complaint, the operative pleading in this action. (Dkt. No. 6 ("Complaint" or "Compl.")).[2] The Complaint names five defendants: BBAC, Assaf, Fransabank, and since-dismissed Defendants Citibank, N.A. ("Citibank") and J.P. Morgan Chase Bank N.A. ("Chase"). BBAC is a Lebanese bank with a head office in Beirut and hundreds of billions of dollars in assets. (Compl. ¶¶ 37–41). Assaf, a foreign company, is BBAC's majority shareholder, owning approximately 55% of BBAC's outstanding shares. (*Id.* ¶¶ 44–45). Fransabank, which is also a Lebanese bank, owns approximately 37% of BBAC's shares. (*Id.* ¶¶ 47–48). Citibank and Chase act as correspondent banks for BBAC in New York, New York. (*Id.* ¶¶ 69–70).

On or about August 25, 2017, Plaintiff Abbas opened a U.S. dollar savings account with BBAC in Lebanon, his country of residence, and deposited substantial sums into the account. (*Id.* ¶¶ 1, 30, 123–25, 163, 178). In July 2018, Abbas attempted to conduct a wire transfer from Lebanon to payees in the United States. (*Id.* ¶¶ 26, 27, 127). Abbas was advised by BBAC management that the transaction would take up to one month to process, but that it could be more easily facilitated through a correspondent bank in the United States. (*Id.*). Either then or at another time, a manager at BBAC advised Abbas that if he wanted to invest in gems in the

[2] The Complaint's allegations are not presented in chronological order and at times it is difficult to discern when events are alleged to have taken place. The Court has tried its best to construct a coherent narrative based on Plaintiffs' allegations.

United States, "it would be better to complete the transaction in the United States." (*Id.* ¶ 160; *see also id.* ¶ 179 (alleging that instead of processing a wire transfer, "BBAC insisted [Abbas] wait to enter the United States")).

At some point before July 2019, Abbas purchased emeralds and diamonds from Plaintiffs Baddour, Cousin-Sabra, Qandeel, and Aburomi, a group of sellers who live in the United States. (*Id.* ¶¶ 1, 26, 127, 138, 140, 157, 161). To pay for the gems, he wrote a check on his BBAC account in the amount of $2.5 million payable to Cousin-Sabra and Baddour. (*Id.* ¶¶ 26, 127, 158). Abbas met up with Cousin-Sabra and Baddour in the United States and, on July 4, 2019, the three entered a Citibank location in downtown Manhattan, hoping to initiate a transaction with the $2.5 million check. (*Id.* ¶¶ 127–28, 140, 157–59).[3]

Citibank, however, refused to process the transaction, insisting that Cousin-Sabra and Baddour open accounts at Citibank, which they declined to do. (*Id.* ¶¶ 162–63, 182). Plaintiffs allege that, because Abbas had a U.S. dollar account at BBAC and "Citibank was a correspondent bank" for BBAC, Abbas had a "lawful right to receive funds from Citibank." (*Id.* ¶¶ 163, 172–74). Plaintiffs also allege that, in going to Citibank, Abbas was following BBAC's advice, yet "neither

---

[3] Certain paragraphs of the Complaint allege that Abbas sought to "cash [the] check." (*Id.* ¶¶ 140, 158). Elsewhere, the Complaint alleges that Abbas requested that "the funds be transferred from Citibank to an account at Bank of America." (*Id.* ¶ 159; *see also id.* ¶¶ 172, 180 (referring to the requested transaction as a "transfer")). The Court regards the latter scenario as more likely and does not take literally the references to "cash[ing]" the check.

The Court also is skeptical that the encounter at the Citibank location took place, as alleged, on July 4, 2019, a date when banks are ordinarily closed in observance of the federal holiday. But the date of the encounter is not material to the Court's analysis.

Citibank nor BBAC seemed willing to provide the money needed to pay the sellers of the gems," even though he had submitted "all required documents." (*Id.* ¶ 161).

Subsequently, since August 2019, BBAC has effectively held Abbas's account hostage, preventing him from closing the account, withdrawing any money from the account, or otherwise exercising any control over the account. (*Id.* ¶¶ 183, 203–09). The account had approximately $3.6 million in it as of November 2023. (*Id.* ¶ 126). Plaintiffs also allege that BBAC, using its correspondent accounts in New York, has fraudulently transferred its U.S. dollar holdings to Assaf and other insiders, including the assets held by BBAC for Abbas. (*Id.* ¶¶ 92–97, 226–67).

According to the Complaint, Abbas is not the only BBAC depositor who has been victimized by this malfeasance, as Plaintiffs allege that BBAC has conspired with others, such as Citibank, to steal billions of dollars by "luring in U.S. depositors" into placing their money into BBAC accounts based on misrepresentations about BBAC's financial health, unsustainable promised interest rates, and false currency conversion rates. (*Id.* ¶¶ 69–70, 86, 170–71). Moreover, Plaintiffs allege that BBAC knowingly aided and abetted Hezbollah, the Lebanon-based terrorist group, by enabling it to access the U.S. financial system. (*Id.* ¶¶ 111–22). Further, Plaintiffs claim that BBAC harassed Abbas in an attempt to intimidate him into withdrawing his present claims. (*Id.* ¶ 178).

The Complaint asserts six causes of action for (1) violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, (2) conversion, (3) fraudulent conveyance under New

York Debtor Creditor Law ("NYDCL") § 273, (4) fraudulent conveyance under NYDCL § 274, (5) attachment, and (6) special damages. (*Id.* ¶¶ 210–95).

### B. Procedural History

Plaintiffs initially filed this action on July 23, 2024. (Dkt. No. 1). In that complaint, Plaintiffs brought the same causes of action as in their operative complaint, based on the same underlying facts, while including additional causes of action for punitive damages and attorneys' fees and costs. (*Id.* ¶¶ 271–81). On October 11, 2024, prior to the issuance of any summonses, Plaintiffs amended their complaint to remove the causes of action for punitive damages and attorneys' fees. (Dkt. No. 2). On October 25, 2024, Plaintiffs filed their Second Amended Complaint, which is identical to the first amended complaint, but attaches additional exhibits. (Dkt. No. 6). Plaintiffs sought and were granted leave to proceed *in forma pauperis*. (Dkt. Nos. 10–15, 25–30).

On February 24, 2025, Judge Cronan ordered Plaintiffs to effect service on the defendants. (Dkt. No. 32). As Judge Cronan explained, Citibank and Chase would be served by the United States Marshals Service, by virtue of Plaintiffs' *in forma pauperis* status, but the Marshals Service could not be required to serve BBAC, Assaf, and Fransabank due to their status as foreign entities. (*Id.*). Accordingly, Plaintiffs were required to serve the foreign defendants on their own. (*Id.* at 3–4). Summonses as to all defendants were issued on February 27, 2025. (Dkt. Nos. 34, 36).

In May 2025, Plaintiffs voluntarily dismissed their claims against Chase. (Dkt. Nos. 43, 45). Citibank moved to dismiss the claims asserted against it, pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 56). In a Report and Recommendation ("R&R") issued on February 4, 2026, the undersigned recommended that Citibank's motion to dismiss be granted in its entirety. (Dkt. No. 78). Judge Cronan subsequently adopted the R&R, dismissing Plaintiffs' claims against Citibank with prejudice and *sua sponte* denying leave to amend as futile. (Dkt. No. 79 at 4–5).

On July 8, 2025, the Court ordered Plaintiffs to show cause as to whether BBAC, Assaf, or Fransabank had been served and, if so, provide proof of such service and explain when and in what manner service was made. (Dkt. No. 53). Plaintiffs provided no response as to Fransabank.[4] However, in response to the Court's order, Plaintiffs did file proof of service as to BBAC and Assaf. (Dkt. No. 58). This proof of service states that service on BBAC and Assaf was completed on May 14, 2025 through delivery to the Branch Manager at BBAC's branch in Tripoli Mina, which is in North Lebanon. (*Id.*). The proof of service is signed by Walid El Ghourani, who purports to be a process server in North Lebanon. (*Id.*).

On August 13, 2025, Defendants filed a letter motion seeking *sua sponte* dismissal of Plaintiffs' claims against them based on failure to complete proper service or, in the alternative, requesting that the Court set a briefing schedule on

[4] The Court had previously, in a June 20, 2025 order, directed Plaintiffs to show cause as to whether Fransabank had been served and, if so, provide proof of such service and explain when and in what manner service was made. (Dkt. No. 50). Plaintiffs did not file a response to that order.

Defendants' anticipated motion to dismiss. (Dkt. No. 61). On August 19 and 29, 2025, the Court ordered Plaintiffs to respond to Defendants' letter. (Dkt. Nos. 62, 63). On September 3, 2025, Plaintiffs responded, contending that the May 14 service was proper under applicable law. (Dkt. No. 65). As a result, the Court subsequently set a briefing schedule for Defendants' anticipated motion to dismiss. (Dkt. No. 68).

Defendants filed their present motion on October 8, 2025 (Dkt. No. 70), accompanied by a memorandum of law (Dkt. No. 71 ("Def. Br.")) and several individual declarations (Dkt. Nos. 72–74). Defendants seek dismissal on several grounds: (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) *forum non conveniens*; and (4) improper service under Fed. R. Civ. P. 12(b)(5).

Plaintiffs filed their opposition brief on November 7, 2025 (Dkt. No. 75 ("Pl. Br.")), and Defendants filed their reply brief on November 21, 2025 (Dkt. No. 76 ("Reply")).

## LEGAL STANDARDS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

"'[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([*i.e.*,] subject-matter jurisdiction).'" *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 272 (S.D.N.Y. 2018) (quoting *Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007)). "'Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed

for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Gurevitch v. Emerald Green Prop. Owners Ass'n*, No. 23 Civ. 8156 (CS), 2025 WL 642347, at *3 (S.D.N.Y. Feb. 27, 2025) (quoting *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008)). "'When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists[.]'" *Id.* at *3 (quoting *Arar*, 532 F.3d at 168).

"Federal courts generally have original subject-matter jurisdiction over two kinds of cases: those involving a question of federal law and those involving a diversity of citizenship." *Gershowitz v. Griv*, No. 24 Civ. 1915 (PAE) (OTW), 2025 WL 2202981, at *2 (S.D.N.Y. July 1, 2025). "Federal question jurisdiction exists where a well-pleaded complaint 'establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25 (2d Cir. 2000) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. of S. Cal.*, 463 U.S. 1, 27–28 (1983)). "Diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000." *Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011) (citing *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009)).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be based solely on the complaint or may rely on evidence beyond the pleadings." *Thorne v. Cap. Music Gear LLC*, No. 23 Civ. 776 (LGS), 2024 WL 1604273, at *2 (S.D.N.Y.

Apr. 12, 2024) (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022)). "'In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction.'" *Id.* (quoting *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016)). "However, the Court 'need not credit a legal conclusion couched as a factual allegation or a naked assertion devoid of further factual enhancement.'" *Feliz v. IHealth Labs Inc.*, No. 23 Civ. 354 (JLR), 2024 WL 342701, at *2 (S.D.N.Y. Jan. 30, 2024) (quoting *Calcano v. Swavorski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022)). Moreover, "[i]t is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020).[5]

**B. Motion to Dismiss for Improper Service Under Rule 12(b)(5)**

"When a defendant moves to dismiss for insufficient service of process under Rule 12(b)(5), 'the plaintiff bears the burden of establishing that service was sufficient.'" *W.J. Deutsch & Sons Ltd. v. Zamora*, No. 21 Civ. 11003 (LTS), 2023 WL 5609205, at *3 (S.D.N.Y. Aug. 30, 2023) (quoting *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010)). "'In considering a motion to dismiss pursuant to Rule 12(b)(5),

---

[5] The Complaint indicates that Plaintiff Cousin-Sabra is a licensed attorney (though not in the state of New York), and its opening paragraph states that Plaintiffs are bringing this action "by and through their undersigned attorney Fleta Cousin-Sabra." (Compl. at 1 and 44). However, Cousin-Sabra has filed no notice of appearance, or motion to appear *pro hac vice*. Although "a court is not obligated" to afford special solicitude "where the *pro se* plaintiff is a licensed attorney," *Smith v. City of New York*, No. 15 Civ. 4493 (RJS), 2016 WL 4574924, at *3 (S.D.N.Y. Sept. 1, 2016), this Court chooses to do so under the circumstances here and will treat the Complaint as a *pro se* pleading despite Cousin-Sabra's involvement.

the Court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was proper.'" *Id.* (quoting *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 215 (S.D.N.Y. 2021)).

"Upon a finding of insufficient service, the Court may dismiss the case or may, in its discretion, retain the case, quash service, and direct that service be effectuated properly." *Vega*, 339 F.R.D. at 217; *see also Mejia v. Castle Hotel*, 164 F.R.D. 343, 345 (S.D.N.Y. 1996) ("Where good cause is shown, [Federal Rule of Civil Procedure] 4(m) requires the Court [to] extend time to serve process. However, where . . . good cause is not established, a court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." (citation and footnote omitted)). Motions under Rule 12(b)(5) thus "'differ from the other motions permitted by Rule 12(b) somewhat in that they offer the court a course of action other than simply dismissing the case when defendant's defense or objection[ ] is sustained.'" *Vega*, 339 F.R.D. at 217 (quoting *Fed. Home Loan Mortg. Corp. v. Dutch Lane Assocs.*, 775 F. Supp. 133, 138 n.2 (S.D.N.Y. 1991)) (alteration in original).

**DISCUSSION**

The analysis below first addresses Defendants' challenge to the Court's subject matter jurisdiction. *See SST Glob. Tech., LLC v. Chapman*, No. 02 Civ. 7687 (CSH), 2004 WL 2480402, at *1 (S.D.N.Y. Nov. 4, 2004) (asserted lack of subject matter jurisdiction is a "threshold question [that] must be addressed first, since if the Court lacks subject matter jurisdiction the case is not before it, and

consequently the Court should say nothing about any other issue"). Concluding that subject matter exists by virtue of Plaintiffs' federal antitrust claim, the Court then proceeds to examine whether service of process on Defendants was proper. The Court finds that service was not proper, and recommends that this action be dismissed on that basis.

### A. Whether the Court Has Subject Matter Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction because, in the section of their Complaint entitled "Jurisdiction," Plaintiffs only plead subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a)(2). (Def. Br. at 7; *see* Compl. ¶ 64). Defendants note, and Plaintiffs concede, that diversity of citizenship is lacking in this case, because Plaintiff Abbas is a resident of Lebanon and BBAC and Assaf are both foreign entities based in Lebanon. (Def. Br. at 7–8; Pl. Br. at 1–2; *see* Compl. ¶¶ 1, 25, 40, 44; *see also Miah v. Morgan Stanley & Co. Int'l PLC*, No. 25 Civ. 1208 (PAE) (HJR), 2025 WL 3700769, at *3 (S.D.N.Y. Sept. 30, 2025) ("'The law in this Circuit is clear that the presence of aliens on two sides of a case destroys diversity jurisdiction.'" (quoting *Theobold v. IFS Int'l Holdings, Inc.*, 443 F. Supp. 2d 556, 557 (S.D.N.Y. 2006)))).

Defendants' argument is unavailing, however, because Plaintiffs plead a claim arising under federal law and that claim confers subject matter jurisdiction under 28 U.S.C. § 1331. Specifically, Plaintiffs' first cause of action alleges a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. (*See* Compl. at 34 (cause of action heading) and ¶¶ 210–14; *id.* ¶¶ 211, 213 (alleging that "Defendants entered into and engaged in a conspiracy to unreasonably restrain trade in violation of

Section 1 of the Sherman Act and Section 4 of the Clayton Act" and that "[t]he conspiracy is a per se violation of federal antitrust laws")).[6] The Sherman Act claim gives rise to subject matter jurisdiction. *See, e.g.*, *Chan Ah Wah v. HSBC N. Am. Holdings Inc.*, No. 15 Civ. 8974 (LGS), 2019 WL 859042, at *4 (S.D.N.Y. Feb. 22, 2019) ("The Court has federal question jurisdiction, as the [complaint] alleges violations of the Sherman Act[.]").

It is true that Plaintiffs did not refer to federal question jurisdiction, or cite 28 U.S.C. § 1331, in the "Jurisdiction" section of (or elsewhere in) the Complaint. But that is of no moment. The Supreme Court has made clear that it does not "matter that the complaint does not in so many words assert § 1331(a) as a basis of jurisdiction" where "the facts alleged in it are sufficient to establish such jurisdiction and the complaint appeared jurisdictionally correct when filed." *Andrus v. Charlestone Stone Prods. Co.*, 436 U.S. 604, 607 n.6 (1978). As the Second Circuit has held, "[w]hen the complaint pleads facts from which federal jurisdiction may be inferred . . . the insufficiency of the jurisdictional allegation is not controlling, and the action need not be dismissed." *Harary v. Blumenthal*, 555 F.2d 1113, 1115 n.1 (2d Cir. 1977); *see also Xiu Jian Sun v. Cuomo*, No. 19 Civ. 497 (MAD), 2019 WL 5307359, at *4 (S.D.N.Y. Oct. 21, 2019) (applying doctrine to *pro se* plaintiff); *Donelli v. Cnty. of Sullivan*, No. 07 Civ. 2157 (JGK), 2009 WL 2365551, at *5 n.5 (S.D.N.Y. July 31, 2009) ("To the extent the Amended Complaint fails to refer to §

---

[6] Section 4 of the Clayton Act, 15 U.S.C. § 15, allows private parties to sue under the federal antitrust laws, including the Sherman Act. *Agency Dev., Inc. v. Med Am. Ins. Co.*, 310 F. Supp. 2d 538, 543 (W.D.N.Y. 2004).

1331 or otherwise to make explicit the appropriate basis for jurisdiction, that failure does not affect the analysis because it is clear that the Amended Complaint, liberally construed, alleges a claim arising under federal law as required under that provision."). As such, Plaintiffs' explicit assertion of a Sherman Act claim suffices to establish subject matter jurisdiction.

In their reply brief, Defendants further argue that even if the Sherman Act claim can be considered for subject matter jurisdiction purposes, "Plaintiffs have failed to plead facts sufficient to support a plausible antitrust claim and dismissal of that claim is appropriate for that additional reason." (Reply at 3). But since Defendants did not raise this argument until their reply brief, the Court need not consider it. *See, e.g.*, *Milestone Aviation Grp. Ltd. v. DSV Air & Sea Inc.*, No. 24 Civ. 3136 (JPC), 2025 WL 846142, at *2 n.2 (S.D.N.Y. Mar. 18, 2025) (finding that defendant had "forfeited [an] argument by raising it for the first time in its Reply brief"); *Solomon v. Sprint Corp.*, No. 19 Civ. 5272 (MKV), 2022 WL 889897, at *4 n.2 (S.D.N.Y. Mar. 25, 2022) ("[O]rdinarily the Court does not consider matters addressed for the first time in a reply brief.").

In any event, whether Plaintiffs have pleaded a "plausible" antitrust claim is a matter to be addressed via a Rule 12(b)(6) motion for failure to state a claim—a motion Defendants have not made—and is not a basis for a motion challenging subject matter jurisdiction under Rule 12(b)(1). *See S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 132 (2d Cir. 2010) ("[W]hether a plaintiff has pled a jurisdiction-conferring claim is a wholly separate issue from whether the complaint

adequately states a legally cognizable claim for relief on the merits."); *Fogel v. Chestnutt*, 668 F.2d 100, 106 (2d Cir. 1981) ("When the plaintiff bases his cause of action upon an act of Congress jurisdiction cannot be defeated by a plea denying the merits of this claim." (citation omitted)); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" (quoting *Oneida Indian Nation of N.Y. v. Cnty. of Oneida*, 414 U.S. 661, 666 (1974))).

For the foregoing reasons, the Court finds that Plaintiffs have appropriately pled subject matter jurisdiction under § 1331 by virtue of their Sherman Act claim, and their Complaint cannot be dismissed under Rule 12(b)(1).

### B. Whether Plaintiffs Properly Served Defendants

Defendants also argue that Plaintiffs' Complaint should be dismissed for insufficient service of process as to both Defendants. (Def. Br. at 20–23). Plaintiffs counter that service was timely and valid. (Pl. Br. at 1). Plaintiffs further argue that, as evidenced by Defendants' appearance in this case and filing of a motion to dismiss, Defendants received "actual notice" of this action and "[a]ctual notice alone defeats a Rule 12(b)(5) motion where service substantially complies with Rule 4(f)." (*Id.* at 4). The Court agrees with Defendants that service was insufficient.

At the outset, the Court rejects Plaintiffs' "actual notice" argument. Courts have consistently found that defective service cannot "be ignored on the mere assertion that a defendant had 'actual notice.'" *Weston Funding, LLC v. Consorcio*

*G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) (quoting *Russ Berrie & Co. v. T.L. Toys (HK) Ltd.*, No. 01 Civ. 4715 (LMM), 2002 WL 31458232, at *2 (S.D.N.Y. Nov. 4, 2002)); *see also Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (summary order) ("Nor can actual notice of suit cure a failure to comply with the statutory requirements for serving process."). Accordingly, that BBAC and Assaf have appeared in this action does not obviate any service deficiencies.

Federal Rule of Civil Procedure 4(h)(2) provides that a foreign entity may be served outside the United States "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under [Rule 4](f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2); *see Safran Elecs. & Def. SAS v. Exail SAS*, 764 F. Supp. 3d 133, 140 (S.D.N.Y. 2025). Rule 4(f), in turn, sets forth several alternative means of service upon individuals in a foreign country. Plaintiffs' brief does not make clear how they believe their attempt at service complied with Rule 4(f). (*See* Pl. Br. at 4). The Court therefore examines the question in light of each of the various provisions of Rule 4(f).

Rule 4(f)(1) allows the use of any internationally agreed upon service method "that is reasonably calculated to give notice," including methods specified in the Hague Convention. Fed. R. Civ. P. 4(f)(1). Lebanon, however, is not a signatory to the Hague Convention. *See United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 267 (S.D.N.Y. 2012). As such, Judge Cronan previously found that service under Rule 4(f)(1) was not available to Plaintiffs. (Dkt. No. 32 at 3–4). Accordingly, service cannot be proper under this provision.

Rule 4(f)(2) covers circumstances where there is no such internationally agreed upon method, identifying a series of four possible methods reasonably calculated to provide notice. These methods are: (i) a method permitted by the foreign country's law to effectuate service in its courts of general jurisdiction, *see* Fed. R. Civ. P. 4(f)(2)(A); (ii) a method directed by the foreign authority "in response to a letter rogatory or letter of request," *see* Fed. R. Civ. P. 4(f)(2)(B); (iii) personal delivery of the summons and complaint on an individual, unless prohibited by the foreign country's law, *see* Fed. R. Civ. P. 4(f)(2)(C)(i); and (iv) having the clerk address and send any form of mail that requires a signed receipt to the individual, unless prohibited by the foreign country's law, *see* Fed. R. Civ. P. 4(f)(2)(C)(ii).

Plaintiffs do not claim to have met the requirements for service of Lebanon's courts under Rule 4(f)(2)(A). (*See* Dkt. No. 75). Moreover, Defendants have submitted sworn declarations disputing that any attempt at service was actually made at the BBAC branch on May 14, 2025, as alleged in Plaintiffs' proof of service, and further asserting that the BBAC branch manager who was purportedly served was not authorized to accept service for either BBAC or Assaf. (Dkt. No. 74 (Declaration of Nadim Hamadeh, Assistant Director General for BBAC) ¶ 23; Dkt. No. 72 (Declaration of Jamil Housamy, Secretary of the Board of Assaf) ¶¶ 9–10; Def Br. at 22). Plaintiffs do not contest these averments or submit any evidence to refute them. (*See* Dkt. No. 75). Therefore, the Court cannot find that service was properly effected under Lebanese law in conformity with Rule 4(f)(2)(A).[7] Nor do

[7] Further, while it is difficult to find English-language primary sources on the topic, it appears that under the Lebanese Code of Civil Procedure, service of process in Lebanon is typically carried out by

Plaintiffs claim to have submitted letters rogatory or letters of request to any Lebanese authority, so they have not met the requirements of Rule 4(f)(2)(B).

As to Rule 4(f)(2)(C), it is not immediately apparent from Plaintiffs' proof of service whether the summons was mailed or personally served. (*See* Dkt. No. 58). Either way, Plaintiffs' attempt at service did not comply with Rule 4(f)(2)(C). If Plaintiffs attempted personal service under Rule 4(f)(2)(C)(i), they were not permitted to do so because, as noted above, parties cannot rely on that provision to serve corporate entities, such as BBAC and Assaf. Fed. R. Civ. P. 4(h)(2); *see also* *Agrana Fruit US, Inc. v. Ingredientrade Inc.*, No. 23 Civ. 10147 (ALC) (GS), 2025 WL 3039929, at *2 n.1 (S.D.N.Y. Oct. 31, 2025). Meanwhile, if Plaintiffs attempted service by mail under Rule 4(f)(2)(C)(ii), "that rule provides that *the clerk of court* must address and send the summons and complaint . . . *and* that rule also mandates the use of a form of mail that requires a receipt[.]" *In re Coudert Bros. LLP*, No. 16 Civ. 8237 (KMK), 2017 WL 1944162, at *12 (S.D.N.Y. May 10, 2017) (emphasis in original); *see* Fed. R. Civ. P. 4(f)(2)(C)(ii). Neither requirement is satisfied here: service was made through Plaintiffs' process server, not the Clerk of Court, and Plaintiffs' proof of service includes no signed receipt of service. (Dkt. No.

---

a bailiff, police officer, interior security force member, or a court clerk. Nayla Comair-Obeid, Ziad Obeid & Zeina Obeid, *Litigation 2026 Lebanon Law and Practice*, CHAMBERS & PARTNERS, https://practiceguides.chambers.com/practice-guides/comparison/1071/17782/27819-27820-27821-27822-27823-27824-27825-27826-27827-27828-27829-27830-27831-27832 (last updated Dec. 2, 2025); *see also Allergan, Inc. v. Dermavita Ltd. P'ship*, Case No.: SACV 17-619-CJC(DFMx), 2017 WL 4769511, at *2 (C.D. Cal. July 26, 2017). However, without an English translation of Lebanese Code of Civil Procedure Article 397 *et seq.*, it is difficult for the Court to determine definitively the requirements for service of process under Lebanese law. Given that Plaintiffs do not claim to have satisfied Rule 4(f)(2)(A), the Court sees no reason to go further with this analysis.

58). *See In re Coudert*, 2017 WL 1944162, at *12 (finding service ineffective under Rule 4(f)(2)(C)(ii) where these requirements were not met).

Lastly, Rule 4(f)(3) allows other means of service "not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). "There is no hierarchy among the subsections in Rule 4(f). That is, Rule 4(f)(3) is neither a last resort nor extraordinary relief." *Asia Cube Energy Holdings, Ltd. v. Inno Energy Tech Co.*, No. 20 Civ. 6203 (AJN), 2020 WL 4884002, at *2 (S.D.N.Y. Aug. 17, 2020) (internal quotations and citations omitted); *see also Doe v. Hyassat*, 342 F.R.D. 53, 58 (S.D.N.Y. 2022). Plaintiffs refer to Rule 4(f)(3) in their brief, as well as in their September 3, 2025 letter to the Court, although they do not explain how they believe they satisfied the provisions of that rule. (*See* Pl. Br. at 4; Dkt. No. 65). Given the special solicitude due to *pro se* plaintiffs, the Court will consider the possible applicability of Rule 4(f)(3) as well.

Courts in this Circuit have long held that Rule 4(f)(3) requires a plaintiff to obtain court approval *prior* to attempting alternate service. *See Fed. Trade Comm'n v. Pecon Software, Ltd.*, No. 12 Civ. 7186 (PAE), 2013 WL 4016272, at *9 (S.D.N.Y. Aug. 7, 2013); *United States v. Machat*, No. 08 Civ. 7936 (JGK), 2009 WL 3029303, at *4 (S.D.N.Y. Sep. 21, 2009); *Klein v. United States*, 278 F.R.D. 94, 97 (W.D.N.Y. 2011) (further holding that actual notice of a plaintiff's attempt to serve is not sufficient to effect service). Plaintiffs received no such approval in this action, nor did they request any. They argue that service by a process server is not prohibited under Lebanese law, and that they therefore satisfy the requirement in Rule 4(f)(3)

that the means of alternate service employed is "not prohibited by international agreement." (Dkt. No. 65; *see* Fed. R. Civ. P. 4(f)(3)). But Plaintiffs do not explain how they complied with the other language in Rule 4(f)(3) requiring that the service be effectuated through means that "the court orders."

To the extent that Plaintiffs suggest that Judge Cronan's February 24 Order provided the requisite approval (*see* Dkt. No. 65), Plaintiffs are incorrect. Rather, that order merely found that Plaintiffs "may either request that the Lebanese Defendants waive service under Rule 4(d)," or "will need to have those Defendants served in some manner permitted under Rules 4(f)(2) or (3)." (Dkt. No. 32 at 4). At the time of the February 24 Order, Plaintiffs had not brought to Judge Cronan's attention that they intended to effect service through the means they ultimately employed in May 2025, let alone sought Judge Cronan's approval for this alternate method of service. The language in the February 24 Order thus fails to support the notion that Judge Cronan affirmatively decided to approve Plaintiffs' method of service pursuant to Rule 4(f)(3).

Based on the foregoing analysis, no subsection of Rule 4(f) has been satisfied, and Plaintiffs' service of process was insufficient.

### C. Whether Plaintiffs' Claims against Defendants Should Be Dismissed for Failure to Serve

As noted above, "[u]pon a finding of insufficient service, the Court may dismiss the case or may, in its discretion, retain the case, quash service, and direct that service be effectuated properly." *Vega*, 339 F.R.D. at 217; *see also* 5B Wright & Miller, *Federal Practice & Procedure* § 1354 (4th ed. 2025); *Fallman v. Hotel*

*Insider, Ltd.*, No. 14 Civ. 10140 (DLC), 2016 WL 5875031, at *4 (S.D.N.Y. Oct. 7, 2016) ("Where service of process is insufficient, the Court may dismiss the action or retain the case but quash the service that has been made on the defendant." (citing *Zapata v. City of New York*, 502 F.3d 192, 196–97 (2d Cir. 2007))).

Generally, courts will decline to dismiss an action for lack of proper service, and will instead quash service, if there is a reasonable chance the defendant(s) will ultimately receive sufficient service. *See, e.g.*, *Spin Master, Ltd. v. Aomore-US*, No. 23 Civ. 7099 (DEH), 2024 WL 3030405, at *12 (S.D.N.Y. June 17, 2024) ("It is thus reasonably likely that Plaintiff will be able to serve Represented Defendants properly, in compliance with international law. Defendants have not shown that any prejudice to them would justify precluding Plaintiff from perfecting service. The Court within its discretion therefore declines to dismiss this case[.]"); *Vega*, 339 F.R.D. at 217 (stating that service "generally" will be quashed where "there is a reasonable prospect that the plaintiff ultimately will be able to serve the defendant properly" (citation omitted)). Whether to quash service and direct that it be effectuated properly or dismiss the action is a determination that requires "balancing all equitable concerns," and is thus sensitive to the circumstances of the case. *Morales v. Robert Fleming, Inc.*, No. 89 Civ. 2106 (JMV), 1989 WL 303516, at *3 (S.D.N.Y. Oct. 30, 1989). Accordingly, decisions in this Circuit have varied. *Compare Vega*, 339 F.R.D. at 225 (quashing service of process), *Lim v. Koon*, No. 24 Civ. 7399 (GS), 2025 WL 2782494, at *22 (S.D.N.Y. Sep. 30, 2025) (same), and *Spin Master*, 2024 WL 3030405, at *18 (same), *with Mende v. Milestone Tech., Inc.*, 269

F. Supp. 2d 246, 256 (S.D.N.Y. 2003) (dismissing), *Rojas v. Nuvem Health LLC*, No. 25 Civ. 4684 (JGK), 2025 WL 3157770, at *3 (S.D.N.Y. Nov. 12, 2025) (same), and *Peale v. James*, No. 23 Civ. 2292 (KMK), 2025 WL 2732859, at *5 (S.D.N.Y. Sep. 25, 2025) (same).

The circumstances of this case point in favor of dismissal.

"When the first attempt at service is ineffective, the appropriate remedy typically is to quash the service rather than to dismiss the claims, assuming there is the prospect of being able to achieve proper service *and the applicable limitations period has not expired*." 5B Wright & Miller, *Federal Practice & Procedure* § 1353 (4th ed. 2026) (emphasis added). This approach has been utilized by courts in this Circuit. *See, e.g.*, *Anselm v. Diamond Packaging*, No. 14 Civ. 6388 (CJS), 2015 WL 2095774, at *6 (W.D.N.Y. May 5, 2015) (dismissing action rather than quashing service where "the statute of limitations on [plaintiff's] Title VII claim has now expired"); *Zola v. Gordon*, 685 F. Supp. 354, 377 (S.D.N.Y.) ("In this circuit, the appropriate procedure in such circumstances, *where the defendant still may be served within the limitations period*, is to quash the service, rather than dismiss the action on this ground.") (emphasis added) (collecting cases), *on reargument*, 701 F. Supp. 66 (S.D.N.Y. 1988).

Often this issue arises where an action was timely when originally filed, the plaintiff proceeds to effect service, the court subsequently determines that service was deficient, the applicable period for service under Rule 4(m) has lapsed, and, in

the interim, the statute of limitations has expired.[8] In such a case, a district court must extend the time for service, and thereby effectively preserve the timeliness of the claim under the applicable statute of limitations, if the plaintiff shows "good cause" for the failure to properly serve the defendant initially. *See Mejia*, 164 F.R.D. at 345. The court also has discretion to extend the time for service, even absent a showing of good cause, upon weighing the impact that a dismissal would have on the parties. *See Zapata*, 502 F.3d at 197; *see also id.* at 198 ("[W]e leave to the district courts to decide on the facts of each case how to weigh the prejudice to the defendant that arises from the necessity of defending an action after both the original service period and the statute of limitations have passed before service.").

This case, however, is not one where the statute of limitations expired *after* the case was filed and the plaintiff made a faulty attempt at service. Rather, Plaintiffs' Sherman Act claim—the sole basis for federal jurisdiction—was untimely *at the time this action was brought*. As set forth more fully in the undersigned's February 4, 2026 R&R dismissing Plaintiffs' claims against Citibank (R&R at 10–13), Sherman Act claims must be brought within four years after the cause of action accrues. 15 U.S.C. § 15b. An antitrust cause of action generally "accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971). "When an antitrust injury is caused [by] a single injurious act, the statute of

---

[8] Although the statute of limitations is tolled during the 90-day period normally afforded a plaintiff to effect service under Rule 4(m), it begins running again if service is not completed by the end of the service period. *See Zapata*, 502 F.3d at 194 n.4; *Lopez v. Guziczek*, No. 21 Civ. 10099 (NSR), 2025 WL 1122537, at *3 (S.D.N.Y. Apr. 16, 2025).

limitations runs from that act, even if the resulting injury continues over a prolonged period." *Rite Aid Corp. v. Am. Express Travel Related Servs. Co.*, 708 F. Supp. 2d 257, 267 (E.D.N.Y. 2010) (citing *Zenith*, 401 U.S. at 338–39), *abrogated on other grounds by US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019).

As noted in the R&R, Plaintiffs' Sherman Act claim rests on allegations that BBAC and Citibank caused antitrust injury to Plaintiffs by refusing to process Abbas's requested $2.5 million transaction in July 2019 and restricting Abbas's access to his account beginning in August 2019. (R&R at 12; *see* Compl. at 1–2 (describing this action as arising from Abbas's being "unlawfully prohibited from transferring money to [his] co-plaintiffs" in order to "pay[] for goods received") & ¶ 212 (alleging that defendants violated the Sherman Act by "control[ing] and restrict[ing] access to Plaintiffs' investments and funds")). The Court concluded that the Sherman Act claim was time-barred because this action was not filed until July 2024, "well more than four years after these allegedly injurious acts." (R&R at 12). The Court further found that the continuing violation doctrine could not salvage the Sherman Act claim, as even "[a]ssuming Plaintiffs allege that Citibank and the other Defendants coordinated to restrict Plaintiffs' access to Abbas's funds from 2019 until present in violation of federal antitrust law, this would merely reflect a reaffirmation of the initial act that did not inflict new and accumulating injury on Plaintiffs." (*Id.*; *see also* Dkt. No. 70 at 3 (agreeing with R&R that

"Plaintiffs' claim against Citibank under the Sherman Act is outside of the applicable four-year limitation period")).

Plaintiffs' Sherman Act claim is no more timely as to BBAC or, to the extent it is asserted against Assaf, as to Assaf.[9] As with Plaintiffs' claim against Citibank, Plaintiffs' claim against BBAC accrued when BBAC restricted access to his funds, purportedly pursuant to its unlawful agreement with Citibank, in July and August 2019, which is more than four years prior to Plaintiffs' filing of this action in July 2024. (*See* Compl. ¶¶ 158–62, 182–83, 203–05, 215–25). Indeed, inasmuch as the Sherman Act claim alleges an unlawful conspiracy between Citibank and BBAC to restrain trade, it follows that if the claim is untimely as to Citibank, it is likewise untimely as to BBAC. Further, the Complaint pleads no acts by Defendants that would constitute a continuing violation, so as to reset the statute of limitations, for the reasons outlined in the R&R. (R&R at 10–13). Even if Defendants were continuing to withhold access to Abbas's account and forcing exorbitant exchange rates for withdrawals, this would not demonstrate the kind of "new and independent act that is not merely a reaffirmation of a previous act" that would restart the statute of limitations. *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 68 (2d Cir. 2019) (quotations omitted); *see also* R&R at 11.

Because Plaintiffs' Sherman Act claim was already barred by the statute of limitations when this action was filed, allowing Plaintiffs another opportunity to

[9] Although the Sherman Act claim is asserted against "Defendants" (*see* Compl. ¶¶ 211–14), the Complaint alleges no facts suggesting that Assaf, in particular, participated in the alleged unlawful agreement to restrain trade.

serve Defendants would not enable Plaintiffs to pursue their Sherman Act claim.[10] For that same reason, there is no need for the Court to assess whether Plaintiffs had "good cause" for their failure to serve Defendants properly—even if good cause existed, extending the period for service would not resuscitate Plaintiffs' already time-barred Sherman Act claim. Nor is there any need for the Court to weigh the impact that a dismissal would have on the parties.[11]

It is possible that one or more of Plaintiffs' state law claims against BBAC and Assaf were timely when this action was filed. But there is no independent basis for subject matter jurisdiction over those claims; as noted above, diversity jurisdiction is lacking. Accordingly, this action could proceed only if the Court decided to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Where, as here, a district court "has dismissed all claims over

---

[10] In response to Citibank's motion to dismiss, Plaintiffs did not seek leave to amend their Complaint or suggest they could plead additional facts that would bring their Sherman Act claim within the statute of limitations. Nor did Plaintiffs file objections to the R&R or ask Judge Cronan for leave to amend their Complaint. (*See* Dkt. No. 70 at 2). Thus, there is no reason to think that Plaintiffs could amend their Complaint now to plead a timely Sherman Act claim against Defendants.

[11] Although unnecessary to its determination, the Court further notes that any prejudice to Plaintiffs from dismissal of the action "is more illusory than real" since their Sherman Act claims against Defendants, in addition to being untimely, "lack merit in any event." *Anselm*, 2015 WL 2095774, at *7. Plaintiffs' Sherman Act claims against BBAC and Assaf mirror their claim against Citibank, which the Court previously found deficient in its prior R&R. As previously stated, Plaintiffs' allegations "are entirely conclusory and do not even suggest conscious parallel conduct" between the defendants, let alone allege any of the other necessary "plus factors" needed to plead a Section 1 claim in the absence of direct evidence of an antitrust conspiracy. (R&R at 15–16; *see also id.* at 13–16). Moreover, Plaintiffs neither allege any "categorically unreasonable restraints on trade," such as price-fixing, nor allege whether and how any restraint of trade led to anticompetitive effects in a relevant market. (*Id.* at 16–17). Plaintiffs' barebones allegations "only hint at" this requirement on limited occasions, "all in conclusory fashion." (*Id.* at 17). As stated in the R&R, even Plaintiffs' allegations of suppressing Abbas's individual account do not allege more than a private dispute, which is insufficient to make out a Sherman Act claim. (*Id.*). Finally, Plaintiffs do not allege any injury other than individual economic harm in a non-conclusory fashion. (*Id.* at 17–18). Accordingly, Plaintiffs' Sherman Act claims would require dismissal even if brought timely.

which it has original jurisdiction," a district court "may decline to exercise supplemental jurisdiction" over remaining non-federal claims. 28 U.S.C. § 1367(c)(3). And "[i]t is well settled that district courts . . . should[] decline to exercise supplemental jurisdiction when 'the federal claims are eliminated in the early stages of the litigation.'" *Smulley v. Fed. Hous. Fin. Agency*, 754 F. App'x 18, 24 (2d Cir. 2018) (summary order) (quoting *Klein & Co. Futures, Inc. v. Bd. of Trade of the City of New York*, 464 F.3d 255, 262 (2d Cir. 2006)).

These considerations also weigh in favor of dismissal. If Plaintiffs were allowed to re-serve Defendants, their Sherman Act would nonetheless be subject to dismissal because it is time-barred, as noted above. Further, because this action is still at the pleading stage, the Court would then decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 130–31 (2d Cir. 1995) (affirming district court's denial of supplemental jurisdiction over state claims after plaintiff's Sherman Act claim was dismissed); *Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.*, No. 00 Civ. 5663 (MBM), 2001 WL 1468168, at *15 (S.D.N.Y. Nov. 19, 2001) (declining to exercise supplemental jurisdiction over state and common law claims after granting motion to dismiss federal antitrust claims). Hence, it would be equally pointless to allow Plaintiffs another opportunity to serve Defendants in order to pursue their state law claims in this action, because Plaintiffs would be unable to do that either.

Accordingly, "[h]aving weighed all of the relevant factors, the Court finds in its discretion, and despite [Plaintiffs'] *pro se* status, that it is appropriate not to

extend [Plaintiffs'] time for service[.]" *Anselm*, 2015 WL 2095774, at *8. Instead, the action should be dismissed without prejudice pursuant to Rule 12(b)(5). *See In re S. Afr. Apartheid Litig.*, 643 F. Supp. 2d 423, 431–32 (S.D.N.Y. 2009) ("Absent perfected service, a court lacks jurisdiction to dismiss an action with prejudice; therefore dismissal pursuant to Rule 12(b)(5) must be without prejudice.").[12]

**D. Whether Plaintiffs' Claims against Fransabank Should be Dismissed**

On June 20, 2025, the Court ordered Plaintiffs, *inter alia*, to show cause as to why this action should not be dismissed against Fransabank based on Plaintiffs' apparent failure to serve Fransabank as of that date. (Dkt. No. 50). The Court warned then that if Plaintiffs "fail[ed] to timely show good cause" by July 3, 2025 "for why this action should not be dismissed against Fransabank, the undersigned will recommend to Judge Cronan that the action be dismissed against Fransabank without prejudice pursuant to Fed. R. Civ. P. 41." (*Id.* at 2). Plaintiffs filed no response to this order.

On July 8, 2025, the Court *sua sponte* extended Plaintiffs' deadline, ordering Plaintiffs to show cause as to whether Fransabank (as well as BBAC and Assaf) had been served and, if so, provide proof of such service and explain when and in what manner service was made. (Dkt. No. 53). Once again, the Court warned Plaintiffs that a failure to timely show good cause would result in the undersigned "recommend[ing] to the Honorable John P. Cronan that the action be dismissed . . .

[12] Given that Plaintiffs' Complaint should be dismissed under Rule 12(b)(5), the Court need not and does not reach Defendants' remaining arguments that the action should be dismissed against them for lack of personal jurisdiction or on *forum non conveniens* grounds.

without prejudice pursuant to Fed. R. Civ. P. 41." (*Id.* at 2). Once again, Plaintiffs filed no response to this order as to Fransabank.

Timeliness of service is governed by Rule 4(m), which states that, if a plaintiff fails to serve a defendant within 90 days after the complaint is filed, a court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m); *see also Aaron v. Keyser*, No. 21 Civ. 5258 (PMH), 2023 WL 3466170, at *7 (S.D.N.Y. May 15, 2023) ("Federal Rule of Civil Procedure 4(m) permits the Court to dismiss an action without prejudice against a defendant who was not served." (citations omitted)).

"Although Rule 4(m) states that it does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), that exception does not apply where, as here, service has not been attempted in a foreign country." *Corniel v. Titech*, No. 17 Civ. 2551 (RRM) (AKT), 2020 WL 1480448, at *6 (E.D.N.Y. Mar. 6, 2020) (internal quotations and citations omitted), *R&R adopted*, 2020 WL 1472442 (E.D.N.Y. Mar. 26, 2020); *see also USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133–34 (2d Cir. 2005) ("Although Rule 4(m) creates an exception for service in a foreign country pursuant to subdivision (f), which sets forth procedures for such service, this exception does not apply if, as here, the plaintiff did not attempt to serve the defendant in the foreign country."); *Falvey Cargo Underwriting Ltd. v. Zim Integrated Shipping Servs. Ltd.*, No. 19 Civ. 11495 (LTS) (SDA), 2023 WL 8716888, at *6 (S.D.N.Y. Nov. 30, 2023) (noting that the "Second Circuit has held that the exemption from the time limit outlined in Rule 4(m) (and its predecessor Rule 4(j))

for service in a foreign country does not apply if service never was attempted within the statutory period" and collecting cases), *R&R adopted*, 2024 WL 3373368 (S.D.N.Y. July 11, 2024).

Plaintiffs have demonstrated no attempt at service on Fransabank in a foreign country, or at all, nor "come forward with any coherent, substantiated excuse for [their] failure to effect timely service." *Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 402 (S.D.N.Y. 2020); *see also Brunson-Bedi v. New York*, No. 15 Civ. 9790 (NSR), 2018 WL 2084171, at *9 (S.D.N.Y. May 1, 2018) (concluding that plaintiff's "utter failure to provide an explanation for the extensive delay in service" warranted dismissal). Accordingly, Plaintiffs' claims against Fransabank should be dismissed under Rule 4(m).

Moreover, even if Rule 4(m) alone did not require dismissal, Plaintiffs' claims against Fransabank should be dismissed under Rule 41(b). Rule 41(b) authorizes a district court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the] rules or a court order[.]" Fed. R. Civ. P. 41(b). "Although the text of [Rule 41(b)] expressly addresses only the case in which a defendant moves for dismissal of an action, it is unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute[.]" *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). Furthermore, Rule 41 authorizes courts to dismiss the relevant action as to only a subset of defendants. *See Feng Chen v. Patel*, No. 16 Civ. 1130 (AT), 2019 WL 2763836, at *15 (S.D.N.Y.

July 2, 2019) (dismissing action as to defaulting defendants for plaintiffs' failure to prosecute and entering judgment in favor of plaintiffs as to remaining defendants).

"A district court considering a Rule 41(b) dismissal must weigh five factors: '(1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.'" *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)). No single factor is generally dispositive. *Nita v. Connecticut Dep't of Env't. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994).

Here, Plaintiffs have failed to respond to the Court's initial order to show cause for a full year. Plaintiffs were additionally warned through both orders that failure to comply would result in dismissal. Further, the Court has a substantial interest in managing its docket, and "it would be unfair to the numerous other litigants awaiting the Court's attention to permit this suit to remain" given Plaintiffs' lack of effort to comply. *Antonio v. Beckford*, No. 05 Civ. 2225 (KMK), 2006 WL 2819598, at *4 (S.D.N.Y. Sept. 29, 2006). Finally, given Plaintiffs' failure to respond to the Court's orders on this point, "[t]here is no reason for the Court to believe that any lesser sanction would cause [them] to pursue this case with appropriate speed." *Id.* Courts in this District routinely dismiss similar actions

under Rule 41 where parties fail to file proof of service on the docket or respond to court orders on the issue. *See, e.g.*, *Ungaro v. Aaron*, No. 24 Civ. 339 (RA), 2024 WL 3678437 (S.D.N.Y. Aug. 5, 2024); *Hoffman v. Fed. Rsrv. Bank of New York*, No. 21 Civ. 2509 (GBD), 2024 WL 1252195 (S.D.N.Y. Mar. 25, 2024) (adopting report and recommendation); *Rivera v. Discovery Wines LLC*, No. 19 Civ. 1418 (RA), 2019 WL 3338140 (S.D.N.Y. July 24, 2019).

Accordingly, as Plaintiffs did not timely attempt service on Fransabank, and ignored two Court orders on the matter, Plaintiffs' claims against Fransabank should be dismissed in their entirety without prejudice.

**CONCLUSION**

For the above reasons, the Court recommends that this action be dismissed, without prejudice and in its entirety, as against each of the three remaining defendants: Bank of Beirut and the Arab Countries, Assaf Holding Company SAL, and Fransabank SAL.

Dated: New York, New York
June 25, 2026

GARY STEIN
United States Magistrate Judge

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from service of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ.

6(a)–(b), (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to the Honorable John P. Cronan. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).